UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TAHIRA H.,

                Plaintiff,

      -v-                                 5:18-CV-1120

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC    KENNETH R. HILLER, ESQ.
Attorneys for Plaintiff                      JUSTIN M. GOLDSTEIN, ESQ.
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226

SOCIAL SECURITY ADMINISTRATION       SIXTINA FERNANDEZ, ESQ.
   OFFICE OF REGIONAL GENERAL        Special Ass't United States Attorney
   COUNSEL – REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Tahira H.[1] ("plaintiff" or "claimant") brings this action seeking review of a final

decision by defendant Commissioner of Social Security ("Commissioner" or "defendant")

---

     [1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on
Court Administration and Case Management and adopted as local practice in this District, only claimant's first
name and last initial will be mentioned in this opinion.

denying her application for Disability Insurance Benefits ("DIB"). Defendant has filed a certified copy of the Administrative Record and both parties have briefed the matter.[2] Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. PROCEDURAL HISTORY

On October 20, 2014, plaintiff filed an application for DIB alleging that her back injury, shoulder injury, arthritis, knee problem, and depression rendered her disabled beginning on September 26, 2014. R. at 170-71, 187-99.[3]

On March 13, 2015, the Commissioner denied plaintiff's application for benefits. R. at 88-91. Thereafter, at plaintiff's request, defendant ordered an Administrative Law Judge ("ALJ") to conduct a *de novo* review of her disability claim. *Id*. at 92, 94-115.

On April 11, 2017, ALJ Gregory M. Hamel presided over a hearing on plaintiff's benefits application. R. at 45-76. The ALJ appeared by video from Alexandria, Virginia. *Id*. Plaintiff, represented by non-attorney representative Matthew F. Nutting, appeared and testified by video from Syracuse, New York. *Id*. The ALJ also heard testimony from Vocational Expert ("VE") Alissa Ann Smith. *Id*.

On May 30, 2017, the ALJ issued a written decision denying plaintiff's disability claim. R. at 10-27. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. *Id*. at 1-6.

---

[2] General Order 18 provides, *inter alia*, that a claimant's appeal from the Commissioner's final decision denying benefits will be treated as if the parties have included in their briefing cross-motions for judgment on the pleadings under Fed. R. Civ. P. 12(c).

[3] Citations to "R." refer to the Administrative Record. Dkt. No. 9.

## III.  LEGAL STANDARDS

### A.  Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied.  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

"First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard."  *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  "Failure to apply the correct legal standards is grounds for reversal."  *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984).

"Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence."  *Tejada*, 167 F.3d at 773.  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Poupore*, 556 F.3d at 305 (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  *See Williams*, 859 F.2d at 258.  Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may lead it to a

different conclusion than the one reached by the Commissioner. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B. The Commissioner's Disability Determination

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Section 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity.  A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits.  §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of

impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings").  20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant whose impairment or combination of impairments meets or equals one of the Listings is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149.

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—the claimant still has the residual functional capacity ("RFC") to perform any past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

The burden of proof with regard to these first four steps is on the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  However, if it is determined that the claimant cannot perform any past relevant work, the burden shifts to the Commissioner for step five.  *Id*.

This fifth step requires the ALJ to examine whether the claimant can do any type of work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs:  very heavy, heavy, medium, light, and sedentary.  *Perez*, 77 F.3d at 46.

The Commissioner typically meets the burden at step five in one of two ways.  If a claimant's impairments are primarily or exclusively exertional in nature, defendant may appropriately rely on the Medical–Vocational Guidelines contained in 20 C.F.R. Pt. 404, Subpt. P, App. 2.  *Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012) (summary order).

Commonly known as "the Grid" or "the Grids," the Medical–Vocational Guidelines are a collection of tables that "simplify and expedite the determination of disability" by offering

"predeterminations of disability or non-disability for individual cases based on various combinations of residual functional capacity, age, education and work skill." *Davis v. Shalala*, 883 F. Supp. 828, 832 (E.D.N.Y. 1995) (citation omitted)

Notably, the Commissioner may rely on the Guidelines even if a claimant suffers from one or more non-exertional impairments. *See, e.g.*, *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) (Cardamone, J.) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines.").

However, if a claimant's non-exertional limitations "significantly diminish" the residual capacity to work, the Commissioner "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Chaparro v. Colvin*, 156 F. Supp. 3d 517, 537 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).

## IV. DISCUSSION

### A. The ALJ's Decision

Applying the five-step disability determination, the ALJ found that: (1) plaintiff had not engaged in substantial gainful activity since September 26, 2014, the alleged onset date; (2) plaintiff's left shoulder rotator cuff tendinosis and partial supraspinatus tear, lumbosacral disc disease with disc herniation, fibromyalgia, rheumatoid or other inflammatory arthritis, and connective tissue disorder were severe impairments within the meaning of the Regulations; and that (3) these impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 12-17.

At step four, the ALJ determined that plaintiff's impairments caused exertional and

non-exertional limitations.  R. at 17-25.  However, the ALJ found that plaintiff retained the

RFC to

> perform light work, . . . except that she can only occasionally climb
> stairs, balance, stoop, kneel, crouch, and crawl; cannot climb
> ladders and similar devices; cannot work in hazardous
> environments; can do frequent but not constant handling, fingering,
> and reaching; and cannot do any overhead reaching or lifting.

*Id*. at 17.

According to the ALJ, this RFC precluded plaintiff from performing her past relevant

work as a "dental assistant," a "dining room attendant," a "hospital cleaner," a "newspaper

deliverer," a "dishwasher," or as a "production machine tender."  R. at 25.  Even so, the ALJ

found that this RFC, considered together with plaintiff's age and education, still allowed her to

perform the job duties of a "small parts assembler" and an "inspector and hand

packager."  *Id*. at 26.

Because these jobs fit in with plaintiff's assessed limitations and were present in

sufficient numbers in the national economy, the ALJ concluded plaintiff was not disabled

within the meaning of the Regulations.  R. at 27.  Accordingly, the ALJ denied plaintiff's

application for benefits from September 26, 2014, the alleged onset date, through May 30,

2017, the date of his written decision.  *Id*.

## B. Plaintiff's Appeal

On appeal, plaintiff contends the ALJ misapplied the legal standards used for

evaluating the medical opinions in the record and, as a result, formulated an RFC that failed

to include the full range of her exertional and non-exertional limitations.  Pl.'s Mem., Dkt. No.

7, 13-25.[4]

## 1. **Step Two**

As an initial matter, however, the Commissioner has correctly identified and addressed a step two argument nested inside of plaintiff's briefing on the ALJ's RFC determination. *See* Def.'s Mem. at 7-12 (citing Pl.'s Mem. at 20).[5]

In the middle of her argument that the ALJ mis-weighed the medical opinions in the record, plaintiff asserts the ALJ should have found her major depressive disorder, anxiety disorder, or post-traumatic stress disorder to be "severe" impairments at step two. Pl.'s Mem. at 20. Plaintiff argues that, as a result of this early-stage error, the ALJ failed to correctly assess any mental limitations in formulating his RFC at step four. *Id*. Indeed, plaintiff complains that the ALJ's "evaluation of the evidence relating to Plaintiff's mental health conditions was limited to a footnote." *Id*.

At step two, the ALJ must determine whether a claimant has one or more "severe" impairments that significant limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). These so-called "basic work activities" include "walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations." *Erik Allen M. v. Berryhill* 2019 WL 3565944, at *3 (N.D.N.Y. May 22, 2019) (citation omitted).

"As a general matter, this step of the sequential evaluation process sets a low bar that

---

[4]  Pagination corresponds to CM/ECF.

[5]  Plaintiff's memorandum of law does not include a table of contents. Without one, it is more difficult to determine the nature and extent of plaintiff's arguments—that is why the local rules require litigants to include one in each brief. N.D.N.Y.L.R. 7.1(a)(1) ("All memoranda of law shall contain a table of contents.").

is intended only to screen out disability claims based on *de minimis* impairments." *Erik Allen M.*, 2019 WL 3565944, at *3 (citing *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) (Kahn, J.)). "Even so, the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment,' is insufficient to render a condition 'severe' within the meaning of the Regulations." *Id*. "Rather, the burden at this step falls on the claimant to identify how the particular symptomatology stemming from the impairment claimed to be 'severe' actually works to 'significantly limit' his physical or mental ability to complete 'basic work activities.'" *Id*. (quoting *Lake v. Colvin*, 2016 WL 2757750, at *4 (N.D.N.Y. May 12, 2016)).

Measured against this body of law, plaintiff's argument is rejected. At step two, the ALJ concluded that plaintiff's mental impairment, however characterized, "does not cause more than minimal limitation in the claimant's ability to perform basic work activities and is therefore non-severe." R. at 14. In reaching that conclusion, the ALJ explained that

> There are suggestions by a treating nurse practitioner of flashbacks and intrusive memories (Exhibit 27F), but there is no diagnosis of posttraumatic stress disorder or any anxiety disorder diagnosed by any acceptable medical source. The claimant has been seen at Syracuse Behavioral Health (generally with nurse practitioners Dean Stark and Anita Fellows) for depressive symptoms. She participated in psychotherapy with such symptoms as low energy, difficulty with concentration and member (see, for example, Exhibit 18F, Page 11). Major depressive disorder and posttraumatic stress disorder were diagnosed by a nurse practitioner (Exhibit 18, Page 17). Recent notes (see Exhibit 16F) discuss memories of war and poor sleep; the notes are prepared by Anita Fellows, Susan Zdanowicz, L.M.S.W., Leanna Severance, R.N., and Tammy Balamut, N.P.; the "admitting practitioner" is listed as Ahmed Abdulhafiz, M.D. on August 31, 2015, but not indication is given that he examined or treated the claimant (see Exhibit 16F, Page 1); a recent submission (Exhibit 27F, page 2) alludes to flashbacks, intrusive memories, and poor concentration and focus. Even if the diagnosis of an anxiety related disorder or postraumatic stress disorder were confirmed by an

acceptable medical source the rating of the Part B functional domains would not change, and hence the outcome of this decision would be the same.

R. at 14 n.1.

This quoted narrative discussion of the mental health treatment evidence is the "footnote" about which plaintiff complains. Contrary to plaintiff's suggestion, this discussion is a fairly thorough one and, more importantly, contains an accurate summary of the material components of the medical record regarding plaintiff's mental impairment(s). R. at 14-15.

ALJ opinions are usually not perfect, and this one is no exception. For instance, the ALJ at one point in his footnoted narrative discussion refers to Anita Fellows as both a nurse practitioner and a social worker. *See* R. at 14 n.1. Ms. Fellows appears to hold the latter title; *i.e.*, she is a L.M.S.W., or licensed master social worker. *See, e.g.*, R. at 655. But there is no indication that this mistaken reference to LMSW Fellows resulted in the misapplication of a legal rule (*e.g.*, the ALJ mistakenly discounting an "acceptable" medical source opinion on the basis it came from an "other" source) or otherwise generated a reversible error in this case.

More importantly, whether or not an "acceptable" medical source diagnosed plaintiff with one or more mental impairments, the burden at step two remains on the claimant to demonstrate not just the existence of an impairment, but also to show how the impairment causes a work-related limitation; *i.e.*, how it "significantly limits" the ability to complete one or more basic work activities.

Plaintiff has not carried this burden. *See, e.g., Jones v. Comm'r of Soc. Sec.*, 2018 WL 3829119, at *2-*3 (W.D.N.Y. Aug. 13, 2018) (rejecting step two argument because plaintiff failed to show the claimed impairment "impacted his ability to perform work-related

functions").  In fact, during the benefits hearing plaintiff complained primarily of *physical* impairments that rendered her unable to work.  R. at 56.

Even assuming otherwise, any failure at this step is harmless error in the context of this case.  The ALJ found other impairments to be severe, continued the sequential evaluation, and explicitly considered the mental health sources identified as relevant by plaintiff when later formulating the RFC.  *See, e.g.*, *Reices–Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding step two error harmless where non-severe impairments were considered at subsequent steps).

## 2.  Treating Sources & the RFC

Returning to the primary argument, plaintiff contends the ALJ misapplied the legal standards governing the evaluation of medical source opinions and, as a result, failed to formulate an RFC that reflected the true extent of her physical and mental limitations.

According to plaintiff, the ALJ improperly rejected:  (a) the *physical* limitations assessed in a medical source report authored by Debra Buchan, M.D., a physician with whom plaintiff had treated for ten years; and (b) the *mental* limitations assessed in a medical source report authored by Dean Stark, a nurse practitioner, and endorsed by Damon A. Tohtz, M.D., the supervising psychiatrist.  Pl.'s Mem. at 14-18, 18-20.

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'"  *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (citation omitted).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626 (S.D.N.Y. 2019) (citations omitted). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192-93 (citation omitted).

Broadly speaking, the Regulations divide evidence from a claimant's medical sources into three categories:  (1) treating; (2) acceptable; and (3) other.[6]  The most important of these is the treating source category, which includes a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant.  *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

The opinion of a treating source regarding the nature and severity of a claimant's

---

[6]  On January 18, 2017, the Social Security Administration made revisions to the rules regarding the evaluation of medical evidence.  Because plaintiff's claim was filed before March 27, 2017, the prior policies govern here.  *See, e.g.*, *Daniels ex. rel. D.M.G. v. Comm'r of Soc. Sec.*, 2018 WL 5019746, at *6 n.13 (S.D.N.Y. Sept. 30, 2018) (explaining the elimination of the treating physician rule and related changes); *Perez v. Comm'r of Soc. Sec.*, 2019 WL 359980, at *6-*7 nn. 6-8 (E.D.N.Y. Jan. 29, 2019) (explaining various changes effective to claims filed after March 27, 2017).

impairments is entitled to *controlling* weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted). And when a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight. *Id*. In fact, a treating physician's opinion may also be properly discounted, or even entirely rejected, when: (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported by clinical findings; or even where (4) it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Id*. (citation omitted).

Where an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in claimant's particular case. *Tammy Lynn B.*, 382 F. Supp. 3d at 193-94 (citation omitted).

Beyond this so-called "treating physician rule," the same six factors set forth above apply with equal force to the evaluation of the remaining categories of medical evidence

recognized by the Regulations:  the "acceptable" and "other" sources mentioned earlier.  *Tammy Lynn* B., 382 F. Supp. 3d at 194 (citation omitted).  The former, those deemed "acceptable" sources, include "licensed physicians (medical or osteopathic doctors, psychologists, optometrists, podiatrists, and speech-language pathologists."  *Id*.  The latter category, deemed "other" in Administration parlance, are "ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists."  *Id*.

Importantly, only evidence from a "treating" or "acceptable" source can be relied upon to establish the *existence* of a medically determinable impairment.  *Tammy Lynn B.*, 382 F. Supp. 3d at 194 (citation omitted).  However, evidence from all three sources "can be considered when determining severity of impairments and how they affect individuals' ability to function."  *Id*.

Finally, while the six-factor analysis set forth above applies in all cases except where "controlling" weight is given to a treating physician's opinion, an ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule.  *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) (noting that an ALJ need not expressly recite each factor so long as it is "clear from the record as a whole that the ALJ properly considered" them).

### a.  Dr. Buchan

On March 30, 2016, Dr. Buchan completed a medical assessment of plaintiff's physical limitations.  R. at 660-67.  In that report, Dr. Buchan noted that she had treated plaintiff for "low back pain" for about ten years, and treated plaintiff for left shoulder pain for about two years.  *Id*.

According to Dr. Buchan's report, plaintiff could occasionally lift or carry up to ten

pounds, could sit, stand, or walk for about an hour at a time, and could handle sitting,

standing, or walking for a maximum of three hours each in an eight-hour work day.  R. at

661-62.  Dr. Buchan opined that plaintiff could frequently reach, handle, finger, feel, push,

and pull with her right and left hand, and could occasionally use foot controls with her right

and left foot.  *Id*. at 663.

Dr. Buchan also opined that plaintiff could never climb stairs or ramps, could never

climb ladders or scaffolds, and could never balance, stoop, kneel, crouch, or crawl.  *Id*. at

664.  Further, Dr. Buchan opined that plaintiff could never tolerate exposure to unprotected

heights or moving mechanical parts, but on an occasional basis could handle operating a

motor vehicle, dealing with humidity and wetness, tolerating dust, odors, fumes, and

pulmonary irritants, extreme cold and heat, and vibrations.  *Id*. at 665.

Dr. Buchan concluded that plaintiff could not perform activities like shopping, could not

travel without the assistance of a companion, could not walk a block at a reasonable pace on

rough or uneven surfaces, and could not use standard public transportation.  R. at

666.  According to Dr. Buchan, plaintiff's prognosis was "poor because of somatization"; *i.e.*,

she had "major emotional issues" that precluded her from "getting well."  *Id*. at 660, 666.

The ALJ assigned "very little weight" to this opinion.  R. at 24.  In the ALJ's view, Dr.

Buchan's assessment of a range of significant physical limitations was "not consistent with or

well supported by the other evidence of record."  *Id*.  This was so, the ALJ reasoned,

because objective findings elsewhere in the record revealed mostly normal findings.  *Id*.

Plaintiff contends it was error to afford this opinion anything less than "significant

weight."  Pl.'s Mem. at 18.  According to plaintiff, "the ALJ set his own lay opinion against Dr.

Buchan's expert medical opinion to interpret random objective findings against Dr. Buchan's

ultimate finding of limitations." *Id*. at 14-15. In making this argument, plaintiff cites to other evidence in the record of "abnormal" physical findings that would tend to support greater physical limitations than those ultimately assessed by the ALJ. *Id*. at 15-17. Plaintiff also claims the ALJ failed to consider the regulatory factors in weighing this opinion. *Id*. at 17-18.

Upon review, there is no reversible error in the ALJ's weighing of Dr. Buchan's opinion. The ALJ is not required to spell out precisely how each and every one of the regulatory factors applies to a given provider's opinion as long as the record reflects that he properly applied the substance of the rule. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) (noting an ALJ need not expressly recite each factor provided it is "clear from the record as a whole that the ALJ properly considered" them).

And contrary to plaintiff's misleading suggestion that it was improper for the ALJ to consider the mostly normal objective findings memorialized in Dr. Buchan's report when weighing this opinion, the regulatory factors actually require the ALJ to consider what evidence, if any, supports the conclusions in the provider's medical report, and how consistent, or inconsistent, those conclusions are when measured against the rest of the medical record. *Cf. Erik Allen M.*, 2019 WL 3565944, at *7 ("[T]he ALJ cannot simply adopt a physician's findings without scrutinizing how they fit in with the entire record of each case.").

That is exactly what the ALJ did here. *See* Def.'s Mem. at 13-18. Importantly, the ALJ's narrative discussion indicates that he also relied in part on a different physical examination in the record. R. at 23. On March 3, 2015, Elke Lorensen, M.D., conducted a consultative physical examination that assessed "moderate" restrictions in bending, lifting, reaching, and squatting, and "no gross limitations" in sitting, standing, walking, or handling small objects. *Id*. at 444-47.

The Commissioner correctly points out that "moderate" limitations like these are frequently found to be consistent with an RFC for a full range of light work. *See, e.g.*, *Jordan v. Comm'r of Soc. Sec.*, 2018 WL 1388527, at *10 (S.D.N.Y. Mar. 19, 2018) (collecting cases). And as the Commissioner also correctly points out, many of the limitations assessed by Dr. Buchan are in fact consistent with the RFC finding ultimately settled on by the ALJ. Def.'s Mem. at 18. Accordingly, the ALJ did not err in weighing Dr. Buchan's opinion.

### b. <u>NP Stark and Dr. Tohtz</u>

On March 16, 2016, Nurse Practitioner Stark completed a medical assessment of plaintiff's mental limitations. R. at 655-59. In that report, NP Stark noted that she had treated plaintiff for three months in 2015, and had been treating plaintiff again since February 10, 2016, through the date of her evaluation. *Id*.

NP Stark opined that plaintiff experienced "moderate" limitations in her ability to carry out simple instructions, to make judgments on simple work-related decisions, and to carry out complex instructions. R. at 656. NP Stark further opined that plaintiff experienced "marked" limitations in her ability to understand and remember simple instructions and to make judgments on complex work-related decisions. *Id*. NP Stark also opined that plaintiff experienced "extreme" limitation in her ability to understand and remember complex instructions. *Id*.

NP Stark concluded that these limitations impaired her ability to interact appropriately with supervision, co-workers, and the public, and that these limitations also impaired her ability to respond to changes in the routine work setting. R. at 657. NP Stark explained that plaintiff experienced "mild" restriction in her ability to interact appropriately with supervisors, and "moderate" restrictions in her ability to interact appropriately with the public, with

co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting. *Id*. Dr. Tohtz, as "admitting psychiatrist," added his signature to NP Stark's assessment on April 14, 2016. R. at 691-95. Other than the second signature and accompanying stamp, the two reports appear to be identical. *Compare* R. at 691-95, *with* R. at 655-59.

The ALJ assigned these opinions "very little weight." R. at 25. In reaching that conclusion, the ALJ noted that NP Stark was not an "acceptable" medical source under the Regulations. *Id*. The ALJ also noted that there was no indication that Dr. Tohtz had actually examined the claimant before adding his weight to the medical report. *Id*. In addition to these threshold observations, the ALJ went on to note that the medical record did not support the severe limitations on plaintiff's mental ability to do work activities reflected in this medical source statement. *Id*.

Plaintiff argues that Dr. Tohtz's signature transforms NP Stark's opinion into one that should have been granted controlling weight under the Regulations. Pl.'s Mem. at 18-20. According to plaintiff, the ALJ failed to properly discount this joint opinion and therefore his failure to include mental limitations in the RFC amounts to reversible error. *Id*.

Generally speaking, "medical source statements co-signed by a treating physician should be evaluated as having been the treating physician's opinion." *Gandino v. Comm'r of Soc. Sec.*, 2018 WL 1033287, at *7 (N.D.N.Y. Feb. 22, 2018) (Carter, M.J.) (collecting cases). Even so, the burden remains on the claimant to establish the existence of a treating relationship to that provider. *Id*.

As an initial matter, the Court notes that this joint opinion by NP Stark and Dr. Tohtz actually comes at multiple layers of removal. In the ordinary case, a non-physician provider,

like a nurse practitioner, will complete a report that is later ratified by the supervising physician.

Under those circumstances, the supervising physician may not have spent as much one-on-one time with the patient as the non-physician provider employed by the practice. However, the physician typically has a direct treating relationship with the patient (having seen them personally) or, at the very least, still enjoys the benefit of being able to discuss the particulars of the patient's medical situation with the provider who ends up actually completing the medical form. In either case, it makes sense to attribute the supervisee's written conclusions to the supervisor who ratifies them with a signature.

In this case, however, the documents at issue appear to have been completed by a third person: LMSW Anita Fellows. The reports were then ratified by NP Stark, and later ratified again by Dr. Tohtz in his supervisory role as admitting psychiatrist. *See* R. at 691-95. Looking more closely at the record, plaintiff treated with Syracuse Behavioral Healthcare for a period of time in 2015 and again in 2016. *Id*. at 568-654.

Over that period, she treated with LMSW Fellows, and NP Stark in addition to a few other providers at this single mental health practice. *See* R. at 568-654. Accordingly, it appears that the general rule set forth above should still apply: a report completed by a non-physician provider and the signed by a doctor should be evaluated as those it reflected the views of the doctor.

Yet even assuming plaintiff went so far as to establish a *treating* relationship with Dr. Tohtz, the ALJ still conducted a proper evaluation of these opinions, investigating the underlying rationale and then measuring the findings against the larger record. Notably, the ALJ discounted this joint opinion of NP Stark and Dr. Tohtz in part because a consultative

psychiatric examination conducted by Dennis M. Noia, Ph.D revealed mostly normal mental findings. R. at 449-53. In contrast to NP Stark and Dr. Tohtz's findings of more severe mental limitations, Dr. Noia found that plaintiff had, at best, "mild" limitation in her ability to deal with stress. *Id*. at 22. The ALJ afforded Dr. Noia's opinion "great weight." *Id*.

"[A]s this court and others have repeatedly stated, there is no requirement that the ALJ pick one RFC and use that particular evaluation in its entirety." *Samantha S.*, 385 F. Supp. 3d at 185 (citation and internal quotation marks omitted). Rather, "it is the ALJ's responsibility to choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment." *Id*.

Plaintiff goes on to cite to other evidence in the record that demonstrates other providers assessed her with mental impairments. Pl.'s Mem. at 20. But this is not enough to warrant re-visiting the ALJ's reasoned decision. *Cf. Greene v. Astrue*, 2012 WL 1248977, at *3 (D. Mass. Apr. 12, 2012) ("[I]n what has become a too common practice, Plaintiff's counsel merely summarizes evidence in the record that she believes supports her client's argument that she is disabled.").

After all, "the ALJ has both the ability and the responsibility to resolve conflicts in the evidence." *Doty v. Comm'r of Soc. Sec.*, 2017 WL 4621630, at *6 (N.D.N.Y. Oct. 13, 2017) (Suddaby, J.). Thus, "once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (citation and internal quotation marks omitted). Because plaintiff cannot carry that burden here, this argument will

be rejected.[7]

Finally, because her arguments about the antecedent steps in the sequential disability analysis have failed, plaintiff cannot show any error in the ALJ's ultimate RFC determination. *See, e.g.*, *Tammy Lynn B.*, 382 F. Supp. 3d at 195 ("Plaintiff's disagreement with the ultimate factual determinations that the ALJ drew from this record evidence is not a basis for remand."). Accordingly, this argument will also be rejected.

## V.  CONCLUSION

The ALJ applied the appropriate legal standards and supported his written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1.  Plaintiff's motion for judgment on the pleadings is DENIED;

2.  The Commissioner's motion for judgment on the pleadings is GRANTED;

3.  The Commissioner's decision is AFFIRMED; and

4.  Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  January 2, 2020
        Utica, New York.

_____

[7]  Plaintiff goes on to argue the ALJ erred in relying at all on the findings of Dr. Noia and the other consulting examiners. Pl.'s Mem. 20-25. For the reasons already discussed at length, the ALJ's RFC formulation reflects a permissible application of the governing legal standards and is supported by substantial evidence. Accordingly, this argument is also rejected.